**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JOHN E. ELLIOTT,                                :

                                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.        :

Case No. 3:07-cv-479

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

3

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on December 2, 2003, and November 19, 2003, respectively, alleging disability from September 1, 2003, due to shoulder and neck impairments. (Tr. 73-75; 508-10; 86). Plaintiff's applications were denied initially and on reconsideration. (Tr. 45-53; 511, 516). A hearing and a supplemental hearing were held before Administrative Law Judge Melvin Padilla, (Tr. 526-57; 558-63), who determined that Plaintiff is not disabled. (Tr. 20-37). The Appeals Council denied Plaintiff's request for review, (Tr. 10-12), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe residuals of surgery and treatment for cervical degenerative disc disease, residuals of remote prior single vessel coronary artery bypass grafting, a history of alcohol abuse in alleged partial remission, and a history of borderline intellectual functioning, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 14, ¶¶ 3, 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 30, ¶ 5). Judge Padilla then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 36). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 37). In his Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to his alleged exertional impairments. (Doc. 6). Therefore, the Court will focus its review of the evidence on Plaintiff's alleged mental impairments.

4

The transcript contains a copy of Plaintiff's school records which reveal that Plaintiff was in special education and that he had deficiencies in his reading, spelling, and math skills. (Tr. 131-41; 148-55). Those records also reveal that in 1977, when Plaintiff about 9 years of age, testing indicated that his language IQ was 61, his non-language IQ was 75, and his total IQ was 66. *Id.*

Examining psychologist Dr. Bonds reported on February 12, 2004, that Plaintiff completed the 8th grade, was in special education, does not have a GED, had not had anything to drink in the past 5 months, had a depressed mood and a broad affect, and that he did not display overt signs of anxiety. (Tr. 207-14). Dr. Bonds also reported that Plaintiff was alert and oriented, had some insight into his problems, and that he was cooperative. *Id.* Dr. Bonds noted that Plaintiff's verbal IQ was 66, his performance IQ was 77, and his full scale IQ was 69, that his verbal and full scale IQ scores were in the extremely low range and his performance IQ was in the borderline range of intellectual functioning, his verbal comprehension and reasoning skills were far below average, and that his memory testing scores were in the extremely low to low average ranges. *Id.* Dr. Bonds opined that Plaintiff's diagnosis was borderline intellectual functioning and his GAF was 60. *Id.* Dr. Bonds also opined that Plaintiff's ability to relate to others was not significantly limited, his ability to understand, remember, and follow instructions was moderately impaired, and that his ability to withstand the stress and pressure associated with day-to-day work activities was not significantly limited. *Id.*

Plaintiff sought mental health treatment at Focus Care during the period June 22 to August 20, 2004. (Tr. 263-77). During that time, Plaintiff's diagnoses were identified as major depression, single episode, and post-traumatic stress disorder. *Id.* Plaintiff's case was closed in October, 2004, because he did not follow through with treatment. *Id.*

In February, 2005, treating internal medicine specialist Dr. Vasiliu reported that Plaintiff's depression should hinder his ability to respond appropriately to supervision, coworkers, and work pressures. (Tr. 355-60). Dr. Vasiliu also reported that Plaintiff was not able to withstand the pressure of meeting normal work standards, sustain concentration and attention for normal work productivity, and that he could not perform activities within a schedule, maintain regular attendance, or complete a normal work-day or week. *Id.*

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to find that he satisfies Listing 12.05C.

Listing 12.05 reads in part:

*Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
...

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001) (citations omitted)(emphasis in original).

First, the Court notes that none of the mental health experts of record have diagnosed Plaintiff with mental retardation. Indeed, Dr. Bonds opined that Plaintiff's diagnoses included borderline intellectual functioning, not mental retardation. In addition, Plaintiff's treating sources at Focus and Plaintiff's treating internal medicine specialist failed to identify any intellectual functioning-related diagnosis nor did the reviewing physician. Finally, the reviewing mental health experts identified Plaintiff's diagnosis as borderline intellectual functioning and concluded that Plaintiff did not satisfy Listing 12.05C.

Second, at the time Judge Padilla issued his decision, the record contained the results of two IQ tests, one performed in 1977 when Plaintiff was about 9 years old, and one from the 2002 examination that Dr. Bonds performed. With respect to the 1977 test results, it is not clear what test was administered to Plaintiff. That is relevant because the Regulations, specifically 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(6)(b)(c), require that the tests must be standardized because not all tests always reflect a similar degree of intellectual functioning. Therefore, validity of the 1977 IQ test results, the only results obtained before Plaintiff was 22 years of age, are, at best, suspect.

Third, there is no evidence in the record that Plaintiff displayed deficits of adaptive

7

functioning associated with mental retardation that initially manifested during his developmental period.  For example, although Plaintiff's school records reveal that he was enrolled in some special education classes, his Individualized Education Program called for him to attend some regular classes as well.  In addition, the record reveals that Plaintiff has few, if any, difficulties engaging in activities of daily living or maintaining social functioning.  For example, during various examinations Plaintiff was alert, oriented, cooperative, and friendly, had normal speech which was clear and goal-oriented, good insight, and put forth satisfactory effort.  See, e.g., Tr. 209-10 (Dr. Bonds); 268 (Focus treatment notes); 460(treating physician Dr. Agrawal).  In addition, Dr. Bonds noted that Plaintiff had sufficient information, judgment, and reasoning abilities to make important decisions concerning his future, to live independently, and to manage his funds.  Finally, the record reveals that Plaintiff has been able to perform substantial gainful activity from about 1984 through September, 2003, his alleged onset date, including a period of time during which he was self-employed.

Under these facts, the Commissioner did not err by failing to find that Plaintiff satisfies Listing 12.05C.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."  *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision

in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

September 3, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (c), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).